United States Court of Appeals,

Eleventh Circuit.

Nos. 94-2101, 94-9138, 94-9159, 94-9161 and 94-9263.

UNITED STATES of America, Plaintiff-Appellee,

v.

Roy SLOAN, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Hein Van PHUNG, a.k.a. Hieu, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Bao VUONG, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Tai NGUYEN, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Hoang NGO, Defendant-Appellant.

Oct. 7, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 93-157-CR-T-99C), H. Dale Cook, Visiting District Judge, (Nos. 1:93-CR-483-2, 1:93-CR-483-3, 1:93-CR-483-4), Jack T. Camp, District Judge.

Appeals from the United States District Court for the Northern District of Georgia.

Before KRAVITCH and COX, Circuit Judges, and CLARK, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

In these consolidated appeals, appellants challenge the sentences imposed after their pleas of guilty to violations of 21

U.S.C. § 841(a).[1]  Appellants argue that the relevant statute and Sentencing Guidelines ("guidelines") are ambiguous because they use a 100:1 weight ratio for "cocaine base" and "cocaine" offenses and thereby punish cocaine base offenses more severely despite the fact that cocaine and cocaine base are chemically synonymous. Appellants contend the rule of lenity should apply and they should receive the less severe penalties.  We disagree and affirm the sentences imposed by the district court.

I.

Appellant Roy Sloan pleaded guilty, in the Middle District of Florida, to two counts of possessing cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a).  At his change of plea hearing, Sloan acknowledged he was pleading guilty to a charge of distributing crack cocaine, and he confirmed the accuracy of the government's factual recitation which indicated he had dealt in crack cocaine.  His Pre-Sentence Report ("PSR") described specific instances in which Sloan distributed crack cocaine and it proposed an imprisonment range under the guidelines using the offense level for cocaine base.  Sloan affirmatively accepted all the findings and guideline applications in his PSR and received 70 months in prison.

Appellants Hein Van Phung, Ngo and Vuong each pleaded guilty, in the Northern District of Georgia, to, inter alia, possession of cocaine base with intent to distribute.  At their change of plea

---

[1]Tai Nguyen, Huong Ngo and Bao Vuong also appeal the district court's deportation order.  Those claims are precluded by the ruling in *United States v. Oboh,* 92 F.3d 1082 (11th Cir.1996) (en banc).

hearings, Ngo and Vuong each acknowledged that they, acting in concert with Phung, had sold crack cocaine. [2] Phung's, Ngo's and Vuong's PSRs also documented that each had distributed crack cocaine.[3] At sentencing, a government expert testified that among the substances seized in connection with the offenses of conviction was crack cocaine, cocaine base in a rock-like form. Phung, Ngo and Vuong did not dispute that they had distributed this substance, but instead argued that there was no scientific definition of crack cocaine and that the sentencing scheme was too ambiguous to warrant enforcement of the heightened, cocaine base penalties. The district court denied the objections and sentenced Phung, Ngo and Vuong to prison terms of 65, 78 and 60 months, respectively.

## II.

The statute under which appellants were sentenced provides in relevant part that:

(1)(A) In the case of a [drug offense] involving— ...

    (ii) 5 kilograms or more of a mixture or substance containing a detectable amount of— ...

    (II) *cocaine, its salts, optical and geometric isomers, and salts of isomers;* ...

    (iii) 50 grams or more of a mixture or substance described in clause (ii) which *contains cocaine base;* ...

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life....

    (B) In the case of a [drug offense] involving— ...

---

[2]Phung's plea colloquy was recorded stenographically, but apparently not transcribed; thus, it is not part of the record.

[3]The PSRs also indicated that, at a co-defendant's trial, Phung testified he had discussed the process for converting cocaine hydrochloride into crack cocaine with the co-defendant.

(ii) 500 grams or more of a mixture or substance containing a detectable amount of— ...

(II) *cocaine, its salts, optical and geometric isomers, and salts of isomers;* ...

(iii) 5 grams or more of a mixture or substance described in clause (ii) which *contains cocaine base;* ...

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years....

21 U.S.C. § 841(b) (emphasis added). The guidelines also provide for a 100:1 weight ratio which effectively punishes "cocaine base" offenses more severely than "cocaine" offenses. *See* U.S.S.G. § 2D1.1(c). Neither the statute, nor the guidelines in effect when these crimes occurred, define "cocaine" or "cocaine base."[4]

Appellants contend this scheme is ambiguous because "cocaine"

---

[4]The guidelines were amended, effective November 1, 1993, to define "cocaine base" as "crack cocaine." U.S.S.G. § 2D1.1(c), Note D (defining crack cocaine as "a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form"). This new definition of "cocaine base" also applies to the mandatory minimum, drug penalty statutes. *See United States v. Munoz-Realpe,* 21 F.3d 375, 377-78 (11th Cir.1994). This amendment came into effect after these crimes occurred, but before appellants were sentenced. While the guidelines in effect at the time of sentencing generally apply, the Ex Post Facto Clause, U.S. Const., Art. I, Sect. 9, prohibits an amendment from being applied in a manner which subjects a person to a greater statutory or guidelines punishment than was authorized prior to the amendment. *See United States v. Howard,* 923 F.2d 1500, 1504 n. 5 (11th Cir.1991). *See also United States v. Camacho,* 40 F.3d 349, 353 (11th Cir.1994) (ruling that the amendment's new definition of cocaine base does not apply retroactively). In his special concurrence, Judge Cox relies upon a recent Second Circuit case to conclude that the guidelines' distinction between cocaine and cocaine base was clear prior to the 1993 amendment, and thus, that the amendment does not subject appellants to greater punishment. Although the Second Circuit's view certainly constitutes persuasive authority, we do not find it a sufficient basis for resolving this difficult issue, and therefore conduct our own analysis in Section III. Citations to § 2D1.1 refer to the pre-1993 version of the guidelines unless specifically noted.

and "cocaine base" are chemically synonymous.   As a result, appellants argue, both the lesser and greater penalty provisions facially apply to all cocaine-related offenses, and pursuant to the rule of lenity,[5] the district court erred when it failed to give them the less severe punishment.[6]

In support of these claims, appellants rely primarily upon the transcript of the sentencing hearing held in   *United States v. Davis,* 864 F.Supp. 1303 (N.D.Ga.1994).  In *Davis,* government, defense and court-appointed experts testified about the chemical composition of cocaine-related substances.  In Phung's, Ngo's and Vuong's cases, the district court, by consent of the parties, adopted the *Davis* transcript and heard further expert testimony from a Drug Enforcement Administration chemist.

### III.

The record establishes the following facts:  the chemical compound, $C_{17}H_{21}NO_4$, occurs naturally in the coca leaf.  It is a

---

[5]Under the rule of lenity, a court "will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958).

[6]The government contends Sloan waived appeal of this issue by failing to raise it in the district court.  Sloan's challenge arguably is subject to plain error review. *See United States v. Antonietti,* 86 F.3d 206 (11th Cir.1996) (applying plain error review to sentencing issues).  Since we find no error, plain or otherwise, we need not address the government's contention.  The government also argues that Phung's and Ngo's claims are moot because:  (1) they appealed only the stiffer statutory penalties, not the heightened guidelines provisions;  and (2) the bottom of their guidelines exceed the statutory minimum sentences they attack.  The court rejects this narrow view of the appeals and finds Phung and Ngo are challenging the entire sentencing scheme.

"base" because it reacts with acids to produce salts, and thus, is referred to chemically as "cocaine" or "cocaine base." This compound is usually processed for importation into the United States by dissolving coca paste derived from the coca leaf in hydrochloric acid, Hcl, and water, $H_2O$, to create a salt, cocaine hydrochloride, $C_{17}H_{22}ClNO_4$, popularly known as powder cocaine. This salt is water soluble and is ingested, injected or snorted, but not smoked because it decomposes at the same temperature at which it evaporates. Cocaine hydrochloride can be converted back to a base by several methods. The most common process requires: (1) dissolving cocaine hydrochloride in baking soda and water; and (2) boiling the mixture into solid form. When dried, the resulting substance, commonly called crack cocaine, is smoked and has the same chemical formula as the naturally occurring base.

The compound, $C_{17}H_{21}NO_4$, in nature or upon conversion from cocaine hydrochloride, is a base, and its distinct physical forms, such as coca paste and crack cocaine, are chemically indistinguishable. Further, substances, such as cocaine hydrochloride, are ultimately derived from the naturally occurring compound. As a result, the references to "cocaine" and "cocaine base" in different parts of § 841(b) and § 2D1.1 create, as courts have noted, some facial ambiguity. *See, e.g., United States v. Booker,* 70 F.3d 488, 492 (7th Cir.1995).

This conclusion, however, does not mandate application of the rule of lenity. "The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to

wrongdoers."  *Callanan v. United States,* 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961).  The court must consider not just the language of the sentencing regime, but also its "structure, legislative history, and motivating policies...." *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980).

The structure of the statutory penalty scheme at issue here counsels against application of the rule of lenity.  Prior to 1986, the drug distribution penalty statute included only one category covering all cocaine-related substances.  *See* 21 U.S.C. § 841(b) (as amended 1984).  In 1986, amid growing concern over the abuse of crack cocaine, Congress amended the law.  Although crack cocaine is only one form of cocaine base, this court has concluded that Congress "chose[ ] to address the "crack problem' by enhancing the penalties for the more broad class of cocaine bases."  *United States v. Rodriguez,* 980 F.2d 1375, 1378 (11th Cir.1992).  To make this change, Congress created separate tiers of punishments within § 841(b) for:  (1) "cocaine, its salts, optical and geometric isomers, and salts of isomers" ("clause ii");  and (2) substances "described in clause (ii) which contain[ ] cocaine base" ("clause iii").  Congress' inclusion of the phrase, "described in clause ii," within clause iii indicates that Congress considered clause ii a re-enactment of the preceding catch-all provision covering all cocaine-related substances and that by enacting clause iii, Congress intended to single out a subset of cocaine-related

substances, all forms of cocaine base, for harsher treatment.[7]

The legislative history and motivating policies underlying § 841(b) also support this construction of the statute. Although courts have construed aspects of § 841(b) differently, this court and all other circuit courts who have considered it, have concluded that, at a minimum, when Congress amended the statute in 1986 it intended to increase penalties for crack cocaine offenses. *See, e.g., Booker,* 70 F.3d at 492 ("Congress was targeting crack cocaine when it passed the stiffer sentencing provisions for "cocaine base.' "); *United States v. Fisher,* 58 F.3d 96, 99 (4th Cir.1995) ("This legislative history demonstrates that Congress intended, with the enactment of clause (iii), to penalize more severely violations involving crack cocaine."); *Rodriguez,* 980 F.2d at 1378 (noting the legislative history "focused on the malevolent nature of crack cocaine").

Congress' intent to impose more severe sanctions upon offenses involving cocaine base, and crack cocaine in particular, must also guide this court's construction of the guidelines' distinction between "cocaine" and "cocaine base" offenses. *See Munoz-Realpe,* 21 F.3d at 378 (ruling that mandatory minimum, drug penalty statutes and analogous guidelines must be treated as a unified whole "since both provisions seek to address the same

---

[7]Appellants assert that cocaine hydrochloride, like all cocaine salts, "contains" cocaine base as its underlying building block. They further argue that this fact means that clauses ii and iii are fully coextensive, and therefore, that the statute is hopelessly ambiguous. This argument fails because it is premised upon an unreasonable construction of the word, "contains." Cocaine salts have a different chemical makeup than cocaine base, and thus, while they contain all of the elements which make up cocaine base, they no longer contain cocaine base.

problem"). As a result, the higher penalty provisions prescribed for cocaine base must be applied to persons, such as appellants, who distribute the rock-like form of cocaine base, while the lesser cocaine penalties must be interpreted as applying to cocaine-related substances, such as the salts, which are chemically distinct from the base compound. *See United States v. Montoya,* 87 F.3d 621, 623 (2d Cir.1996) (ruling that even prior to the 1993 amendment there was "no doubt that the Guidelines' term cocaine base included *at least* crack" (emphasis in original)). Congress' recent rejection of the proposed guideline amendment which would have ended the 100:1 weight ratio further confirms its intent that crack cocaine offenses should receive harsher treatment under the guidelines, as well as the drug distribution statute. *See United States v. Canales,* 91 F.3d 363, 369 (2d Cir.1996) (observing that "Congress instructed the [Sentencing] Commission that "the sentence imposed for trafficking in a quantity of crack cocaine should generally exceed the sentence imposed for trafficking in a like amount of powder cocaine' " (internal citations omitted)). "While Congress's later view as to the meaning of pre-existing law does not seal the outcome when addressing a question of statutory interpretation, it should not be discounted when relevant." *Sorrell v. Commissioner of Internal Revenue,* 882 F.2d 484, 489 (11th Cir.1989). *See also Johnsen v. Commissioner of Internal Revenue,* 794 F.2d 1157, 1163 (6th Cir.1986) ("Although the views of a later Congress are not controlling as to the meaning of pre-existing law, they carry some weight and may not be ignored

when they are clearly relevant.").[8]

No doubt Congress could have enacted a statute which expressed its intentions more precisely, but that fact does not compel the conclusion that the statute Congress chose to enact is so ambiguous that the rule of lenity applies. Appellants are entitled to the benefit of the rule only if their actions in distributing a rock-like form of cocaine base were arguably subject to § 841(b)'s and § 2D1.1(c)'s lower tier of penalties. The structure, legislative history and motivating policies behind the sentencing scheme precludes such a conclusion.

IV.

Alternatively, appellants assert that the sentencing scheme violates the equal protection prong of the Due Process Clause, U.S. Const., amend. V. First, they contend it treats crack cocaine and other forms of cocaine base disparately without a rational basis.[9]

_____

[8]Appellants' claim that crack cocaine lacks a scientific definition does not affect these conclusions. Crack cocaine can be chemically identified as a form of cocaine base, and it is sufficiently physically distinguishable to allow persons, such as appellants, to confirm that they have distributed it. *See id.* at 368 ("The street name "crack' is not ambiguous, because crack has a common and ordinary meaning that is understood by [appellant concededly], by others in the drug trade, and by citizens in the communities that are plagued by the drug.").

[9]In his special concurrence, Judge Cox proposes that we not reach this issue "because it was not presented to the district court." He quotes a portion of the motion filed in district court by the Northern District of Georgia appellants in which they articulate only a race-based, equal protection challenge. Elsewhere in that motion, however, these appellants also explicitly requested that the district court adopt the reasoning of the *Davis* court. In *Davis,* the district court concluded there was no rational basis for treating crack cocaine and other forms of cocaine base differently. *See Davis,* 864 F.Supp. at 1309 & n. 25. Thus, although appellants could have articulated this precise claim more clearly before the district court, in my view they preserved the issue for appeal. Because we must reach this

This assertion is without merit. Although the 1993 amendment to the guidelines redefined "cocaine base" as only "crack cocaine," that amendment went into effect after these crimes occurred. Thus, under the law applicable to this case, crack cocaine is treated the same as other forms of cocaine base. *See Rodriguez,* 980 F.2d at 1378. Appellants next argue that the sentencing regime's distinction between cocaine base and cocaine hydrochloride lacks a rational basis. This court repeatedly has rejected this claim. *See, e.g., United States v. Terry,* 60 F.3d 1541, 1544 (11th Cir.1995) (ruling that Congress singled out cocaine base offenses for harsher treatment because of its availability, cost and effects).

Accordingly, we AFFIRM the sentences imposed by the district court.

COX, Circuit Judge, specially concurring:

I join parts I, II and III of the court's opinion, except for footnote 4. Footnote 4 suggests, but does not hold, that the guideline amendment effective November 1, 1993, which defines "cocaine base" as "crack," does not apply in this case. In my view the guideline amendment does apply. All of the appellants were sentenced after its effective date. Application of this amendment would not violate the Ex Post Facto Clause of the Constitution because its application would not subject appellants to greater guideline or statutory punishment than was authorized prior to the amendment. "[E]ven prior to the amendment the distinction made in

issue for some appellants and find no error of any sort, there is no need to determine the form of review, if any, to which Sloan, who admittedly failed to raise this claim, is entitled.

the guidelines between cocaine and cocaine base was clear. Further, the express purpose of the 1993 amendment was to reject the interpretation of cases ... which had ruled that cocaine base included more than crack....  Thus, the amendment did not expand the reach of the term cocaine base as used in § 2D1.1(c), but rather confined it."  *United States v. Montoya,* 87 F.3d 621, 623 (2d Cir.1996).

I do not join the portion of part IV of the court's opinion that addresses appellants' contention that crack cocaine and other forms of cocaine base are treated disparately without a rational basis, in violation of the equal protection prong of the Due Process Clause.  I would not address that contention because it was not presented to the district court.

Sloan admittedly failed to present this issue to the district court.  The other appellants filed in the district court a written motion asserting their constitutional challenges to the sentencing scheme in question.  The ground for their equal protection challenge appears in their motion.  It reads as follows:

> The federal sentencing provisions regarding cocaine base impose a disproportionate burden upon blacks and other people of color.  Congress was motivated by racial considerations when it enacted the enhancement provision for cocaine base. Such a law is not constitutionally valid unless the classification is narrowly tailored to further a compelling government interest.  The statute is not narrowly tailored; instead it is arbitrary, irrational, and was racially motivated.

(R. 1-171 at 8.)  We should not entertain on appeal an issue not raised in the district court. *See Booth v. Hume Publishing, Inc.,* 902 F.2d 925 (11th Cir.1990) ("[A]s a general rule an appellate court will not consider a legal issue or theory raised for the

first time on appeal....").