William and Melba NICHOLS,
Plaintiffs,

v.

CITIGROUP GLOBAL MARKETS,
INC., et al., Defendants.

No. CIV.A. 04–PWG2424S.

United States District Court,
N.D. Alabama,
Southern Division.

Nov. 10, 2004.

W. Stancil Starnes, Jay M. Ezelle, Robin H. Jones, Starnes & Atchison LLP, Birmingham, AL, for Defendants.

## ORDER PURSUANT TO PARAGRAPH 5, GENERAL ORDER OF REFERENCE

GREENE, United States Chief Magistrate Judge.

This matter is before the undersigned magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b), Rule 72(b) of the *Federal Rules of Civil Procedure*, and the General Orders of Reference dated July 25, 1996, May 8, 1998, as amended July 27, 2000 for consideration of plaintiff's motion to remand this action to the Circuit Court of Jefferson County, Alabama. (Doc. # 2).[1]

## THE UNDERLYING ACTION

On June 24, 2004 William and Melba Nichols initiated this civil action with a complaint filed in the Circuit Court of Jefferson County, Alabama [CV 04–03870]. The complaint identified CitiGroup Global Markets, Inc. and Travelers. [Life & Annuity Company], both foreign corporations, as defendants. The complaint also averred that Fred Judd and Mike Scruggs were agents and employees of the defendant CitiGroup and its predecessor, Salomon Smith Barney, Inc. Both Judd and Scruggs are alleged to be citizens of the State of Alabama. (Doc. # 1, Exhibit 1, at p. 2).[2]

The complaint avers that Scruggs and Judd "solicited to sell the funds, securities and contracts to fund William Nichols IRA account." The complaint alleges, *inter alia*, that Judd sold Mr. Nichols a "variable annuity policy to fund [his] IRA account." The complaint also avers that Scruggs, as the current broker of record for plaintiff's account, has maintained contact with plaintiffs on behalf of CitiGroup. The IRA roll over account was funded through a 1035 exchange of Mr. Nichols' retirement savings. The complaint alleges that based upon the representation and assurances and omissions of the defendants, Mr. Nichols purchased a variable annuity. The annuity was apparently a product offered by Travelers Life & Annuity. Mr. Nichols alleges that the variable annuity product purchased from Traveler's upon the representations of CitiGroup was not consistent with meet the goals of his IRA. Mr. Nichols complains that the annuity "contained worthless mortality fees and tax deferral fees" and prohibited "endlessly and continuously accumulat[ing] money

---

1. Also pending is a motion of CitiGroup Global Markets, Inc. and others to compel arbitration. (Doc. # 7). For the reasons more fully set forth below that motion may not be considered in this court.

2. The complaint at p. 4 also refers to an otherwise unidentified defendant, RHC. "7.... Accordingly, this court has personal jurisdiction over the defendants CitiGroup, RHC and Travelers." and "8. Defendant CitiGroup, RHC and Travelers, by and through their agents and representative defendants Judd and Scruggs...." RHC is not listed as a party to the action at p. 2. It is assumed for the purposes of this order that RHC is not defendant to this action.

in her retirement account."[3] The Nichols contend that Judd was improperly trained by the defendant and, because of his improper training, sold annuity plans to individuals without a need for them. The complaint also averred that "the commissions and fees paid to agents in connection with deferred annuities are generally much higher than other investments, . . . ."

The complaint alleged that CitiGroup had a duty to "sale [sic] suitable investments to the plaintiffs" (Complaint at p. 6, ¶ 17) but that CitiGroup, Judd and Scruggs recommended and/or sold shares ". . . of mutual funds invested heavily in technology stocks, emerging stock market stocks and international stocks for the plaintiffs for the IRA retirement account and their non-qualified accounts." (*Id.* at ¶ 18). The complaint alleges that CitiGroup, Judd and Scruggs knew or should have known that such mutual funds were not suitable for plaintiffs' retirement investment objectives and capital preservation. (*Id.* at ¶ 19). Finally, as an apparent subset of the numerous representations made by Judd, Scruggs and CitiGroup, the Nichols contend that ". . ., defendant CitiGroup issued fraudulent and misleading financial reports and recommendations for the holding of WorldCom, Inc. common stock" (*Id.* at ¶ 21) and that "defendant CitiGroup asserted undue influence on its investment banking interest or research analyst in the CitiGroup brokerage department." (*Id.* at ¶ 22). Finally, that "defendants recommended and sold shares of WorldCom to the plaintiffs for the IRA accounts and their non-qualified accounts." (*Id.* at ¶ 24).

The complaint (1) does not name WorldCom, Inc. as a defendant in this action and (2) asserts legal claims which sound exclusively in state law. Count one of the complaint alleges a fraudulent misrepresentation and suppression, count two alleges a violation of *Alabama Code* § 8–6–19(a) and § 8–6–19(c) of the Alabama Securities Act, count three asserts an unjust enrichment claim, count four asserts a claim for "money had and received," count five asserts a conversion claim, count six contends that the defendant "negligently and/or wantonly trained its employees, count seven asserts a claim of negligent and/or wanton supervision, and count eight alleges a breach of a fiduciary duty."

*The Notice of Removal*

On August 6, 2004 CitiGroup Global Markets, Inc. and the individual defendants together with Traveler's Life & Annuity Company removed this action to the United States District Court for the Northern District of Alabama. (Doc. # 1). The removing defendants ". . . based removal on 28 U.S.C. § 1452(a), . . ." (Doc. # 1 at p. 2). The defendants aver that "this court has jurisdiction over this action under 28 U.S.C. § 1334(b) because, . . . [the Nichols'] claims are related to a case under Chapter 11 under Title 11 of the United States Code. That case was filed on July 21, 2002 by WorldCom, Inc. . . . and is pending in the United States District Court for the Southern District of New York." (*Id.* at pp. 2–unnumbered p. 3). An exhibit to the Notice of Removal is a paper identified as "attachment to proof of claim of CitiGroup, Inc." which appears to be a proof of claim filed by CitiGroup in some bankruptcy action which averred that

"WorldCom [WorldCom] [is] indebted and/ liable to [CitiGroup] for amounts

---

**3.** It is not clear whether the reference to "her" relates to Mrs. Nichols or is a typographical error. For the purposes of this order the difference is insignificant.

yet to be liquidated, paid or incurred and based upon contingent claims arising from certain pending and threatened litigation and other proceedings, ..., against [CitiGroup] that are related to [WorldCom's] financial condition and commercial relations with [CitiGroup]."

3. [CitiGroup's] claims are for common law right of indemnity, contribution, set-off and liability against the defendants arising, among other things, [WorldCom's] fraudulent and negligent misrepresentation to [Citi-Group] about matters—including, ..., the [WorldCom's] financial condition and account practice....

(Doc. # 1, unnumbered exhibit 2).

The Notice of Removal asserts that the Nichols' Jefferson County Circuit Court action is "related to" the bankruptcy action of non-defendant WorldCom because the Alabama law suit "affects the bankruptcy estate [of WorldCom]." (Notice of Removal, unnumbered p. 6 at ¶ 15) citing *In Re Gypsum, Inc.*, 910 F.2d 784, 789 (11th Cir.1990).

## APPLICABLE LAW

*Federal Jurisdiction—General Principles*

■ Whenever a United States District Court is called upon to assess its jurisdiction to resolve a particular dispute certain organizing principles bear repeating. The United States District Court for the Northern District of Alabama is a creation of Congress, U.S. Const, Art. III, and possesses only that portion of the constitu-tionally permissible field of Article III jurisdiction specifically granted to it by Congress. The contours of its jurisdiction may not, and must not, be expanded by judicial usurpation. *Snyder v. Harris*, 394 U.S. 332, 341, 89 S.Ct. 1053, 1059, 22 L.Ed.2d 319 (1969). "Subject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power. Whether raised by the litigants or not the federal courts, including appellate courts, are duty-bound to determine jurisdiction and dismiss [or remand] any case in which it is found to be wanting." *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir.1983). "... [J]urisdiction is not a game. As the Supreme Court [has] made abundantly clear, it is one of the fundamental tenants of our Constitution that only some cases may be brought in federal court." *E.R. Squibb & Sons v. Accident and Cas. Ins. Company*, 160 F.3d 925, 929 (2d Cir.1998), *citing Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934).[4] Subject-matter jurisdiction can never be waived or conferred by the consent of the parties. *Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). As the Supreme Court has explained that "'the rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, [and] requires this court, of its own motion, to deny its jurisdiction, and, ... that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record.'" *Insurance Corporation of Ireland*, 456 U.S. at

---

4. In *E.R. Squibb & Sons* the parties had litigated the case for more than 16 years assuming their right to be in federal court. There was no suggestion of collusion between the litigants to create federal jurisdiction. Nonetheless, the Second Circuit found that the United States courts lack subject matter jurisdiction terminating the action in that court despite recognizing the fact that "...it [will] be dismal for all concerned to have to go back to square one after 16 years, ...." *Squibb & Sons*, 160 F.3d at 930.

702, 102 S.Ct. at 2104 (*quoting Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884)).

■ It is well-settled that the defendant, as the party removing an action to federal court, has the burden of establishing federal jurisdiction. *See Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir. 1996). Removal statutes must be strictly construed because of the significant federalism concerns raised by removal jurisdiction. *See Shamrock Oil & Gas Corporation v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Placing the burden on the removing defendant and resolving all doubts in favor of plaintiff as against the defendant is consistent with, if not mandated by, the Constitution and statutory limitations on the exercise of federal judicial power. *B, Inc. v. Miller Brewing Company,* 663 F.2d 545 (5th Cir.1981). Allocating the burden in this fashion affirms an organizing tenant of removal jurisprudence, that is, that the statutory right of removal does not outweigh nor even equal the plaintiff's right to pursue their claims in their own manner in the chosen forum. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).

■ The Constitution and those statutes authorizing removal permit an action to proceed in federal court rather than a state court but only if the federal jurisdiction is indisputably clear. *See Barrow S.S. Co. v. Kane,* 170 U.S. 100, 111, 18 S.Ct. 526, 530, 42 L.Ed. 964 (1898), *cited in Davis v. Carl Cannon Chevrolet–Olds, Inc.,* 182 F.3d 792, 794 (11th Cir.1999). "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."

*Fitzgerald v. Seaboard System R. R.,* 760 F.2d 1249 (11th Cir.1985); *citing Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *City of Kenosha, Wisconsin v. Bruno,* 412 U.S. 507, 511, 93 S.Ct. 2222, 2225, 37 L.Ed.2d 109 (1973). If the court lacks subject matter jurisdiction over the case it must be remanded. 28 U.S.C. § 1447(c).

## THE STATUTES

Title 28 U.S.C. § 1452 provides as follows:

(a) A party may remove any claim or cause of action in a civil action ..., to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under § 1334 of this Title.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision not to remand, is not reviewable by appeal or otherwise of a court of appeals ....

28 U.S.C. § 1452 captioned as "Removal of Claims Related to Bankruptcy Cases."

Title 28 U.S.C. § 1334(b) provides that:

(b) Notwithstanding any act of Congress that confers exclusive jurisdiction on a court or courts other than the district court, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.

(c)(1) Nothing in this section prevents a district court in the interest of

justice, or in the interest of comity with state courts or with respect to state, from abstaining from hearing a particular proceeding arising under Title 11 or arising in or related to a case under Title 11.

(2) Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this subsection, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated in a state forum of appropriate jurisdiction.

28 U.S.C. § 1334 captioned "Bankruptcy Cases and Proceedings."

Section 1334(c) makes clear that a district court must, under certain circumstances, or may under others, abstain from hearing a particular controversy notwithstanding an arguable finding of jurisdiction.[5]

## THE ELEVENTH CIRCUIT

■ There is no dispute that the action filed by the Nichols against CitiGroup with respect to their individual retirement account in the Circuit Court of Jefferson County, Alabama did not "arise under" nor "arise in" the bankruptcy proceeding in-

volving WorldCom in the Southern District of New York. It is also without dispute that the Nichols do not seek nor could they recover damages from WorldCom in any fashion within the context of their lawsuit. "Hence, the only of the three categories of proceedings over which the district court is granted jurisdiction is that potentially relevant to this case is proceedings 'related to under Chapter 11' connection has been described as 'the minimum for bankruptcy jurisdiction.' " *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir.1999) (citing and quoting E. Scott Fruehwald, *The Bankruptcy Related to Subject Matter Jurisdiction of Bankruptcy Courts*, 44 Drake L.Rev. 1, 7 (1995)). As noted in *In re Toledo*, the "seminal case in [the Eleventh] Circuit on the scope of the bankruptcy court's 'related to' jurisdiction [is *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784 (11th Cir.1990) ]." *Id.* In *In re Lemco Gypsum, Inc.* the Eleventh Circuit adopted the "liberal test" from *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984) stating that:

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an affect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the han-

---

**5.** It is in the abstention context that CitiGroup errs when it chides plaintiffs for failing to perceive the distinction between jurisdiction and "core v. non-core" matters. The court understands the plaintiffs' motion to remand and brief in opposition to removal as contend-

ing that even if this court had jurisdiction it could not or should not exercise that jurisdiction given the nature of the plaintiffs' case. If that is what plaintiffs contend, then they are probably right and abstention would be appropriate pursuant to § 1334(c)(1)..

dling and administration of the bankrupt estate.

*Lemco Gypsum,* 910 F.2d at 788 (quoting *Pacor,* 743 F.2d at 994).

In *In re Toledo* the Eleventh Circuit observed that "the key word in the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad." *Id.,* citing *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 264 (3rd Cir.1991).[6] Not surprisingly CitiGroup Global Markets, Inc. seizes upon the upon the dual notions that the purported grant of jurisdiction is "broad" and that the rest for jurisdiction rests with the term "conceivably."[7]

The actual scope of the holding of *In re Toledo* is more modest than the proposition for which CitiGroup cites it here. Indeed, *Toledo* provides a governor upon the jurisdictional engine that is 28 U.S.C. § 1452. In *Toledo* the debtor, Toledo, formed a partnership with a man whose successor was Carmen Sanchez for the purpose of developing land in downtown Miami. Toledo was the managing partner and Sanchez was generally uninvolved in partnership affairs. When Toledo encountered personal financial problems, he conveyed a mortgage of partnership property, without the knowledge or consent of Sanchez, to "the bank." He also convinced the holder of the pre-existing mortgage on the partnership property to subordinate that mortgage to that of "the bank." The bank ultimately filed a notice of foreclosure on both Toledo's home and the partnership property to satisfy a debt of $1.8 million. One day prior to the actual foreclosure, Toledo filed for Chapter 11. After filing for bankruptcy, Toledo, the bank and the first mortgage holder negotiated a private sale of the partnership property to the original mortgage holder. The bank was to receive some $200,000 from the sale. Sanchez became aware of the private sale and consented to its terms but sought to have the bankruptcy court ensure that the proceeds from the sale were placed in escrow rather than distributed to creditors. When the bankruptcy court declined to do so, Sanchez filed an adversary proceeding against the trustee, Toledo and "the bank." The issue to be resolved by the Eleventh Circuit was the bank's assertion that the bankruptcy court lacked subject matter jurisdiction over the adversary proceeding. There is no question that the property at issue was property pledged by Toledo and the subject of a bankruptcy proceeding. There is also no question the

**6.** The Third Circuit, the wellspring of the *Pacor* test formulation has read the test far less expansively than CitiGroup asserts here. In *In re Federal–Mogul Global, Inc.,* 282 B.R. 301 (Bkrtcy.D.Del.), *mandamus denied,* 300 F.3d 368 (3rd Cir.2002), *cert. denied,* 537 U.S. 1148, 123 S.Ct. 884, 154 L.Ed.2d 851 (2003), the Third Circuit affirmed the bankruptcy court in concluding that "related-to bankruptcy [j]urisdiction [does] not extend to a dispute between non-debtors unless that dispute, by itself, creates at least the logical possibility that the estate will be affected." *Federal–Mogul,* 282 B.R. at 309. In *Federal–Mogul* the bankruptcy court denied motions to transfer on the basis that it could not exercise related-to [j]urisdiction over litigation be-

tween non-debtors based merely on the prospect that the non-debtor co-defendant would have an indemnity claim against the debtors having concluded that it lacked subject matter jurisdiction over the claims and remanded the actions to state courts.

**7.** "Conceivable ... *adj.* capable of being conceived; imaginable." *The Random House College Dictionary* (Random House). Finding that federal subject matter jurisdiction may be predicated on whatever might be "imagined" appears inconsistent with the constitutional principles of federalism contained within Article III.

proceedings were filed directly with the bankruptcy court. Applying the general rubric of the *Pacor* test, the Eleventh Circuit found that the adversary proceeding reflected the required nexus with the bankruptcy estate because (1) Sanchez was seeking a judicial determination of the extent and of the priority of liens and other interests in the partnership property. Had the bankruptcy court concluded that the bank's mortgage was valid, its claim against the bankruptcy estate would be reduced by the $200,000 due to the bank out of the sale of partnership property. The court also found that the estate was connected to the adversary proceeding in that if the mortgage were adjudged invalid, there would be more equity in the partnership property with respect to Toledo and an additional $200,000 would be free to increase the equity of the partnership property. Rather than finding that the adversary proceeding was merely "conceivably" capable of affecting the bankruptcy estate, the Eleventh Circuit concluded that in fact it would affect the bankruptcy estate even though the non-debtor bank and original mortgage holder were affected parties. *In re Toledo* does not in any way support the conclusion that CitiGroup can establish federal subject matter jurisdiction merely because non-party WorldCom is in bankruptcy and Citi-Group may at some unspecified time in the future attempt to establish a perspective indebtedness of WorldCom to CitiGroup.[8]

Within the Eleventh Circuit at least three courts have expressly rejected the theory under which CitiGroup attempts to proceed here. In *City of Birmingham Retirement and Relief Fund v. Citigroup, Inc.*, 2003 WL 22697225 (N.D.Ala. 2003) [not reported in F.Supp.2d] (N.D.Ala. 2003), Judge Bowdre concluded that even when predicated upon contractual indemnification "the primary action between plaintiff and defendants has no effect on the WorldCom bankruptcy estate, but at best is merely a precursor to a potential claim of indemnification against WorldCom by the defendants." (*Id.* at p. 14). Judge Bowdre referred to *Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, 285 B.R. 519 (M.D.Ala.2002) and *Skylark v. Honeywell International, Inc.*, 2002 WL 32101980 (S.D.Fla.2002). In *Retirement Systems of Alabama* the court concluded that "indemnification claims [were] contingent, not absolute," and therefore the "lawsuit's potential effect" on the estate was "speculative and premature." *Retirement Systems of Alabama*, 285 B.R. at 527.[9]

In short, the persuasive authority in the Eleventh Circuit addressing the question raised here has been decided adversely to the position of CitiGroup.

## THE SOUTHERN DISTRICT OF NEW YORK

With good reason, CitiGroup relies principally upon a series of opinions both published and unpublished by United States District Judge Denise Cote in the Southern District of New York generally under

---

**8.** See *In re Challenge Air Intern., Inc.*, 952 F.2d 384, 388 (11th Cir.1992) (Jurisdiction of the bankruptcy court is limited to matters affecting the estate and the parties' conflicting claims to estate property.)

**9.** See also *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 753–54 (E.D.Pa. 2003) and *Illinois Mun. Ret. Fund v. Citi-Group, Inc.*, 2003 U.S. Dist. Lexis 16255, cited by Judge Cote in *In re WorldCom, Inc., Securities Litigation*, 2003 WL 22953644 (S.D.N.Y.2003).

the caption of *In re WorldCom, Inc. Securities Litigation.* CitiGroup correctly observes that Judge Cote's analysis of the "related to" jurisdiction question with respect to WorldCom in the cases before her has been described as "through and scholarly." *In re Global Crossing, Limited Securities Litigation,* 2003 WL 21659360 (S.D.N.Y. July 15, 2003) (cited at p. 6 of doc. #13).[10] In the securities litigation before Judge Cote, the actions were filed against certain former World-Com executive officers, underwriters of WorldCom's bond offerings, WorldCom's directors, WorldCom's accountants, and those associated with Saloman Smith Barney who issued or are responsible for financial analyst's reports regarding World-Com. Significantly, in the cases before Judge Cote, "WorldCom, Inc. [was] identified [ ], as however, a 'related-non-party.' " *In re WorldCom Securities Litigation,* 293 B.R. 308, 312 (S.D.N.Y. March 3, 2003).[11]

With respect to the individual plaintiffs' the core question to be addressed by Judge Cote was whether the provision of the 1933 Act barred ordinary federal question removal of claims brought in state

court. *Id.* Judge Cote also observed that under Second Circuit law, "in determining whether potential claims by third-party defendants against the debtor for either indemnification or contribution give rise to 'related to' jurisdiction over the litigation to which the debtor is not a party . . . have generally found jurisdiction where there is a 'reasonable' legal basis for the claim." *In re Securities Litigation,* 293 B.R. at 317.[12] The underwriter defendants to which CitiGroup has likened itself specifically identified for Judge Cote "the indemnification clauses in the underwriting agreement for WorldCom's . . . bond offering" and tendered the provisions of the Securities Act providing for contribution in addition to "common law theories." *Id.,* 293 B.R. at 320. Concluding that "the existence of strong interconnections between the third-party action and the bankruptcy has been cited frequently by courts in concluding third-party litigation is related to the bankruptcy proceeding" Judge Cote found "related to" jurisdiction. See *In re Securities Litigation* at 321.[13] Judge Cote concluded that to remand actions to the state court would "be entirely duplicative and wasteful. It would eat into the funds available to pay alleged victims iden-

---

10. That said, however, persuasive authority remains only persuasive authority. There is no discrete category of "really" persuasive authority to be afforded the analysis of a district judge in another circuit addressing similar issues. E.g., *United States v. Sloan,* 97 F.3d 1378, 1381 (11th Cir.1996) ("Although the Second Circuit's view certainly constitutes persuasive authority, we do not find it a sufficient basis for resolving this difficult issue, and therefore conduct our own analysis. . . .")

11. Plaintiffs in a number of individual actions were permitted to intervene in a motion to remand filed by New York City Employees Retirement System. The individual actions at issue "include[d][ ] federal claims, specifically claims, under sections 11 and 12 of the 1933 Act, 15 U.S.C. § 77k and § 77l." *Id.*

12. Judge Cote also acknowledged that at least one judge of the Southern District of New York had concluded that "[while] contribution and indemnification claims could conceivably affect a state administration but nonetheless [found] that they were a 'insufficient' basis for jurisdiction." Citing, *General Electric Cap. Corp. v. Pro–Fac Coop.,* 2002 WL 1300054 (S.D.N.Y. June 2002).

13. It cannot be seriously viewed that there is any "strong interconnection" between the action of the Nichols against the defendants in the Jefferson County Circuit Court and the multimillion dollar bankruptcy estate of WorldCom.

tified in this litigation.... A remand would encourage a race for assets, a race that may deprive many victims of the alleged fraud of their fair share of recovery." Clearly, no such interests can be identified in the Nichols' law suit.

In declining to issue a writ of mandamus to Judge Cote, the Second Circuit made two interesting observations with respect to the March 3, 2003 order. See *California Public Retirement System v. WorldCom*, 368 F.3d 86 (2d Cir.2004). First, the Second Circuit observed that Judge Cote rejected an argument that the April 14, 2003 filing of WorldCom's plan for reorganization divested the district court of jurisdiction over the bond holders' claims on grounds that the plan of reorganization would limit the defendant's ability to recover from the estate on indemnification and contribution claims. Affirming Judge Cote the Second Circuit said that it did so because Judge Cote correctly observed that the district court would not have been divested of jurisdiction because jurisdiction "is established based upon the facts at the time of removal." In that the Nichols' action was filed well after the April 14, 2003 reorganization plan of WorldCom there is no reason to believe that the Second Circuit would find that the reorganization plan referred to by Judge Cote would not limit WorldCom's exposure and therefore have a minimal impact on the estate. This, in turn, renders the notion that the Nichols' law suit could affect the estate even more unlikely. The Second Circuit also observed that with respect to the "contribution claims" Judge Cote was to be affirmed because "at least one alternative basis for 'related to' jurisdiction may exist i.e., the director's indemnification claims against the estate-we are not convinced that the bond holders have raised a 'troubling question that should be reviewed on an interlocutory basis.'" *California Public Employees' Retirement System v. WorldCom*, 368 F.3d at 95. There is no "alternative basis" for "related to" jurisdiction applicable in this case. Moreover, and more directly relevant here, is the Second Circuit's consideration of the contention by the bond holders that there is no "related to" jurisdiction because "it [was] always [ ] evident that various defendants' claims against WorldCom's estate would be valued at or near zero in any plan of reorganization,..." The Circuit concluded that the question was not properly before the court for 1292(b) consideration "[and] because the issue is not properly before us, we intimate no view as to whether the bond holders' claims are 'related to' WorldCom's bankruptcy case *notwithstanding the tenuous connection between those claims and WorldCom's reorganization process.*" *Id.* (emphasis added) While the claims of bond holders may or may not be similar to the inchoate suggestion of "contributions" or "indemnification," it is important that the circuit court looked to the "tenuous connection" between a claim and the reorganization process in expressing some concern with respect to Judge Cote's denial of remand. While Judge Cote's opinion is certainly relevant, it cannot be gainsaid that her conclusion that "related to" jurisdiction of even the claims in her court has been ratified by the Second Circuit. Judge Cote's analysis is indeed scholarly and thorough but is also predicated upon allegations, issues and evidence clearly not present here.

### ALABAMA LAW

██ The question of indemnity and contribution is subject to Alabama law in

the absence of evidence to the contrary.[14] It axiomatic that in Alabama a joint tortfeasor is generally not entitled to contribution or indemnity from another tortfeasor. *Crigler v. Salac,* 438 So.2d 1375 (Ala.1983). A joint tortfeasor is entitled to indemnity only where (1) he has not been guilty of any fault, except technical or constructive, or where both parties are at fault but the fault of the party from whom indemnity is sought was the proximate or primary cause of the injury. *Crigler,* 438 So.2d 1375. See also *Allstate Insurance Company v. Amerisure Ins. Cos.,* 603 So.2d 961, 963 (Ala.1992) ("Under Alabama law the doctrine of implied contractual indemnity permits recovery only when the party to be indemnified is 'without fault.'") None of this to say that CitiGroup, the only defendant asserting a claim against World-Com in the bankruptcy action does or does not have a viable cause of action for contribution or indemnification. It is to say, however, that whatever that claim may be it is not a certainty under prevailing law. Judge Bowdre found nearly identical claims to be so tenuous, speculative and distant that there was no conceivable relationship between the bankruptcy estate and the lawsuit. Mr. and Mrs. Nichols' IRA account whatever claim CitiGroup may make cannot conceivably effect the bankruptcy estate of WorldCom. It may be true that there may be some activity in the Chapter 11 proceedings but that is a separate matter and does not create jurisdiction.

Moreover, even if a tenuous thread of jurisdiction could be found, this is a case in which abstention of this court and by extension the bankruptcy court is almost unequivocally warranted.

The United States District Court for the Northern District of Alabama lacks subject matter jurisdiction. Accordingly it is therefore ORDERED that this case be REMANDED to the Circuit Court of Jefferson County effective fifteen (15) days following the date of the entry of this order. Any party may seek review of the order of remand pursuant to 72, *Federal Rules of Civil Procedure.* The remand will occur fifteen (15) days after the entry of this order unless stayed by appropriate order. (See General Orders of Reference dated July 25, 1996 and May 8, 1998, as amended July 27, 2000, ¶ 5).

Upon remand the clerk is DIRECTED to send a certified copy of this order to the clerk of the Circuit Court of Jefferson County, Alabama.

---

**14.** While CitiGroup uses interchangeably the terms indemnification and contribution, and cites to cases involving such potential relief it does so without distinguishing between cases in which there are indemnification agreements extant, which does not appear to be the case here and contribution cases are not grounded in similar facts.