[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13089
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cr-00232-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEMETRIUS JOHN ERVIN,
a.k.a. Nice,
a.k.a. Demetrius John Erwin,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(February 5, 2015)

Before HULL, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

After a jury trial, Demetrious Ervin appeals his convictions and total 168-month sentence for distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1); possession of a controlled substance with intent to distribute, also in violation of § 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

On appeal, Ervin argues that at trial the district court erred: (1) by denying Ervin's motion for a judgment of acquittal because the government failed to prove the cocaine Ervin possessed and sold to a confidential source was cocaine hydrochloride, as alleged in his indictment; (2) by allowing the government to introduce evidence of Ervin's sale of cocaine to the confidential source two days before the charged offenses without providing the 20-day notice required by the district court's local rules; and (3) by allowing the government to refer to Ervin's prior drug convictions during closing arguments. Ervin also argues that at sentencing the district court misapplied the official victim adjustment, pursuant to U.S.S.G. § 3A1.2(c)(1), in calculating Ervin's advisory guidelines range. After review, we affirm Ervin's convictions and total sentence.

## I. MOTION FOR JUDGMENT OF ACQUITTAL

The district court did not err in denying Ervin's motion for a judgment of acquittal. The government presented sufficient evidence from which a reasonable

jury could find beyond a reasonable doubt not only that Ervin knowingly possessed and distributed a controlled substance, but also that the controlled substance was cocaine hydrochloride, as charged in Ervin's indictment.  See United States v. Sanders, 668 F.3d 1298, 1309-10 (11th Cir. 2012) (explaining that because the specific amount and type of drugs are not elements of a § 841(a) offense, the government needed only to prove the defendant knew that he possessed a controlled substance, and not the particular kind of controlled substance).

Specifically, with regard to the type of controlled substance, the government presented the testimony of the agent in charge, Officer Herbert Harley, and the confidential source involved in the undercover operation.  Both witnesses testified that Ervin sold the confidential source cocaine on two occasions.  The government also introduced taped phone conversations and video recordings corroborating their testimony.  As to the form of cocaine, an expert forensic chemist testified that: (1) cocaine hydrochloride is the powder form of cocaine and is a controlled substance; (2) the packages of white-powered substances that Ervin sold to the confidential source and that were found in Ervin's car and home all tested positive for cocaine; and (3) although the test to confirm the cocaine's form was not performed, based on appearance, the powder cocaine "appear[ed] to possibly be cocaine

hydrochloride," and not cocaine base or a "crack-type drug."[1]  Finally, the government also introduced for the jury's inspection the actual cocaine seized by the agents, which was in powder form.

There is also no merit to Ervin's argument, made for the first time on appeal, that the district court constructively amended the indictment by allowing the case to go to the jury.  The district court charged the jury that, to find Ervin guilty of the § 841(a) offenses, the jury must find beyond a reasonable doubt that Ervin knowingly and intentionally possessed and distributed cocaine hydrochloride.  Cf. United States v. Narog, 372 F.3d 1243, 1247-49 (11th Cir. 2004) (explaining that where the indictment charges a particular controlled substance, the district court constructively amends the indictment by charging the jury that any controlled substance will suffice).  Further, as discussed above, the government's trial evidence as to the form of the controlled substance—cocaine hydrochloride—was consistent with Ervin's indictment, which charged cocaine hydrochloride.  Thus, there was no variance.  See id. at 1247 (explaining that there is no variance when the "facts proved at trial [do] not deviate from the facts alleged in the indictment").

---

[1]For purposes of federal drug offenses, cocaine base refers only to "crack" cocaine, which is made by processing cocaine hydrochloride and sodium bicarbonate and usually has a lumpy, rock-like appearance, and not to other forms of cocaine base.  See United States v. Munoz-Realpe, 21 F.3d 375, 377-78 (11th Cir. 1994); U.S.S.G. § 2D1.1(c) cmt. n.(D).  Cocaine hydrochloride, popularly called cocaine powder, is a salt made by dissolving coca paste in hydrochloric acid and water.  United States v. Sloan, 97 F.3d 1378, 1381 (11th Cir. 1996).

4

In any event, Ervin's claims of constructive amendment and/or variance fail under plain error review because Ervin cannot show prejudice. See United States v. Madden, 733 F.3d 1314, 1322 (11th Cir. 2013) (concluding that traditional plain error review applies where the defendant failed to object to a constructive amendment in the district court); Narog, 372 F.3d at 1247 (explaining that "variance requires reversal only when the defendant can establish that his rights were substantially prejudiced thereby"). All forms of cocaine are a controlled substance for § 841(a) purposes. See 21 U.S.C. § 812(c), Schedule II(a)(4). The form of the cocaine makes a material difference only for sentencing purposes, with the stiffer sentences reserved for crack cocaine offenses. See, e.g., id. § 841(b)(1)(A)(ii)(II) & (iii), (b)(1)(B)(ii)(II) & (iii) (distinguishing between "cocaine, its salts, optical and geometric isomers, and salts of isomers" and "cocaine base"); U.S.S.G. § 2D1.1(c) & n.(D) (distinguishing between cocaine and cocaine base, defined as "crack" cocaine); see also United States v. Sloan, 97 F.3d 1378, 1382-83 (11th Cir. 1996) (explaining that the higher penalty provisions for cocaine base apply only to offenses involving "the rock-like form of cocaine base" and the lesser penalties apply to other cocaine-related substances, such as salts). Because cocaine hydrochloride carries the lower penalties for cocaine offenses, and Ervin does not dispute that the government proved he possessed some form of cocaine, there was no harm to Ervin.

## II.  PRIOR COCAINE SALE EVIDENCE

The district court did not abuse its discretion by admitting evidence of Ervin's August 17 drug sale to the confidential source two days before the charged August 19 drug sale.

Specifically, on August 17, 2011, during the undercover investigation, Officer Harley sent the confidential source to make a "buy-walk" purchase of cocaine from Ervin.  Then, two days later on August 19, 2011, Officer Harley sent the confidential source back to Ervin to make a "buy-bust" purchase, after which Ervin was arrested.  Only the August 19 "buy-bust" purchase was charged in Ervin's indictment.

About four months after Ervin's arraignment and two weeks before trial, the government provided Ervin with a "Notice of Intrinsic Evidence" that it intended to introduce evidence of Ervin's August 17 cocaine sale to the confidential source.

Prior to trial, Ervin sought to exclude evidence of the August 17 "buy-walk" purchase based solely on Local Rule 16.2, which requires the government to provide the defendant with written notice of its intent to offer evidence of uncharged prior acts "no more than twenty (20) days after the arraignment (unless the Court directs otherwise) . . . ."  See S.D. Ga. Crim. R. 16.2.  The district court denied Ervin's motion in limine.  The district court found that Ervin had actual

notice of the evidence within the time period provided by Local Rule 16.2 and was not prejudiced by receiving the formal notice two weeks before trial.

We cannot say the district court abused its discretion in applying Local Rule 16.2. Although Local Rule 16.2 requires the government to provide notice within twenty days of arraignment, it also grants the district court discretion to waive the notice requirement. Given that Ervin does not dispute that he had actual notice of the unindicted August 17 cocaine sale and that Ervin did not contend the evidence was otherwise inadmissible, it was within the district court's discretion to waive the Local Rule's formal notice requirement based on a lack of prejudice to Ervin.

## III.  PROSECUTOR'S REFERENCE TO PRIOR CONVICTIONS

Before trial, the district court ruled that Ervin's prior drug trafficking convictions—a 2007 Georgia conviction for marijuana and cocaine possession and a 2013 Mississippi conviction for "possession of cocaine with intent"—were admissible under Federal Rule of Evidence 404(b). At trial, the government introduced certified copies of these convictions. During closing argument, the prosecutor argued to the jury that Ervin's prior convictions showed he was an experienced drug dealer who financed his fast lifestyle by "sling[ing] cocaine from here to Mississippi." Ervin did not object to the prosecutor's comment at the time or later move for a mistrial.

On appeal, Ervin contends that the prosecutor's reference to his prior drug convictions during closing argument is reversible error because it was outside the purposes allowed by Rule 404(b) and prejudicial.  Because Ervin failed to contemporaneously object to the alleged prosecutorial misconduct, we review only for plain error.  See United States v. Flanders, 752 F.3d 1317, 1332-33 (11th Cir. 2014).  Under the third prong of the plain error test, the defendant must show that the prosecutor's alleged misconduct affected his substantial rights, which "almost always requires that the error must have affected the outcome of the district court proceedings."  Id. at 1333 (quotation marks omitted).

Here, even assuming arguendo that the prosecutor's remarks about the Rule 404(b) evidence were arguably improper, Ervin cannot show he was prejudiced by them given the overwhelming evidence of his guilt.  The uncontested trial testimony of both Officer Harley and the confidential source established that Ervin made a sale of cocaine hydrochloride on August 19, 2011 and was arrested immediately thereafter.  This testimony was corroborated by taped phone calls arranging the sale and video surveillance of the transaction.  After Ervin's arrest, officers found more cocaine and drug trafficking paraphernalia in both Ervin's vehicle and his residence.  At the time of his arrest, Ervin was carrying a loaded firearm in his pants pocket and was a convicted felon.

Furthermore, the district court instructed the jury as to the proper uses of Rule 404(b) evidence.  See United States v. Duran, 596 F.3d 1283, 1300 (11th Cir. 2010) (indicating that improper comments by the prosecutor about Rule 404(b) evidence may be cured by the district court's instruction as to the permissible uses of such evidence).  We ordinarily presume the jury followed the district court's instructions, and Ervin has provided us no basis for disregarding that presumption here.  See United States v. Stone, 9 F.3d 934, 938 (11th Cir. 1993) (requiring an "overwhelming probability" standard to overcome the presumption that the jury follows the court's instructions).

In light of the ample independent evidence of Ervin's guilt and the district court's Rule 404(b) instruction, Ervin has not met his burden to show the prosecutor's comments during closing arguments about Ervin's prior drug convictions affected his substantial rights.

## IV.  OFFICIAL VICTIM ADJUSTMENT

Under U.S.S.G. § 3A1.2, a defendant's offense level is increased by six levels where, during immediate flight, the defendant assaulted a law enforcement officer "in a manner creating a substantial risk of serious bodily injury."  U.S.S.G. § 3A1.2(c)(1).  The six-level adjustment "applies in circumstances tantamount to aggravated assault," id. § 3A1.2 cmt. n.4(A), such as when a defendant drives his car in such a manner as to endanger the lives of police officers by causing a

9

collision.  See United States v. Stanley, 24 F.3d 1314, 1322 (11th Cir. 1994) (applying prior version of § 3A1.2, which called for a three-level adjustment).

Here, the six-level official victim adjustment was amply warranted based on the undisputed facts in Ervin's Presentence Investigation Report, as well as the video recordings of Ervin's arrest, the trial testimony of the officers who participated in Ervin's arrest, and Officer Harley's sentencing hearing testimony. In particular, when officers moved in to arrest Ervin immediately after the cocaine sale, Ervin, who was in his car, attempted to flee by repeatedly hitting two police vehicles that had boxed him in.  The officers surrounding Ervin's car had to use a taser, a metal breaching tool, and a police dog to stop Ervin and remove him from his car.  During the takedown, one officer had to jump into the bed of the confidential source's truck when Ervin's car began swaying left to right.  Once outside the car, Ervin fought with the officers, causing another officer to suffer a broken hand before Ervin could be subdued.

We reject Ervin's argument that § 3A1.2(c)(1) applies only if the defendant commits an aggravated assault as defined in the commentary to another guideline in U.S.S.G. § 2A2.2.  See U.S.S.G. § 2A2.2 cmt. n.1.  The commentary to which Ervin refers explicitly states that the definition is only "[f]or purposes of this guideline."  Id.  Definitions of general applicability are found in U.S.S.G. § 1B1.1,

and definitions appearing in particular sections of the Sentencing Guidelines "are not designed for general applicability."  U.S.S.G. § 1B1.1 cmt. n.2.

Given the particular circumstances here, the district court properly found that Ervin, while attempting to flee, assaulted the officers trying to arrest him and did so in a manner that created a substantial risk of serious bodily injury, which is what § 3A1.2(c)(1) explicitly requires.  Accordingly, the district court did not err in applying § 3A1.2(c)(1)'s six-level adjustment.

**AFFIRMED.**